We're going to hear argument next in number 21-995, Laufer v. Ganesha Hospitality LLC. We're proceeding on this by Zoom. Mr. Houlihan. Good morning, Your Honor. May it please the court, my name is Tom Houlihan, and I represent the appellant, Ganesha Hospitality. I'm here with my co-counsel, Ashley Newell. The Article 3 standing issue before the court this morning is nearly identical to the one decided in the Hardy v. Press Point Realty case a few months ago. In this case, Deborah Laufer, who is a resident of Florida and self-proclaimed ADA tester, has sued Ganesha Hospitality, who operates and owns a hotel in Cromwell, Connecticut, claiming that certain online reservation websites violate the ADA. Like in Hardy, the plaintiff here does not allege that she was using the websites to arrange for future travel. Instead, the sole purpose of using the websites was to test their compliance with the ADA. Further, similar to Hardy, although the plaintiff alleges that she intends to visit Connecticut, that intention is to get some unknown point in the future without any concrete plans to use them. Finally, the plaintiff further claims that she has been deprived of certain information that she's entitled to under the ADA. However, similar to the plaintiff in Hardy, the plaintiff in this case has failed to allege any downstream consequences resulting from her failure to receive that information. But isn't that similar to the parties in Havens Realty who were testers? I mean, isn't it true that in that case the testers had no intention of renting or purchasing a home? Isn't that similar to Laufer in this case? Well, I think Havens is different, Your Honor, and I think the Tenth Circuit and the Luper case does a good job of distinguishing Havens to these types of cases. Specifically, the plaintiff in Havens was not just denied information. On four separate occasions, she was intentionally given false information based on her race. There's no allegation here that Ganesha gave the plaintiff false information or denied the plaintiff information because of her disability. All individuals, whether or not disabled, have access to the same information. Well, I mean, the regulations certainly don't contemplate that if you give everyone the same information, you're not discriminating on the basis of disability, right? The regulations adopt a framework in which in order to provide non-discriminatory access to information about your facilities, you need to provide certain information about accessibility so that people who need accessible accommodations don't have to take some extra effort to find the information. Why isn't that discriminatory provision under the EEOC regs of the services, namely the online reservation service of the defendant of the hotel? Well, Your Honor, as this court addressed in the Hardy case, unless a plaintiff has an interest in using that information beyond bringing a lawsuit, the plaintiff cannot allege a concrete arm nor an actual or imminent injury. And therefore, it's not a private plaintiff's job to look out for the public good. A private plaintiff needs to have a concrete arm or an actual or imminent injury in order to bring a lawsuit on this case. So in your reading of Hardy, if the plaintiff, in her capacity as a tester, had actually showed up at the hotel to ask about their accommodations, with no intention whatsoever of reserving a room for the night, regardless of the answer, would she have standing if they, A, didn't have adequate accommodations, or B, misrepresented what they had, or those two different questions? I believe those are different questions. Obviously, that's a different factual scenario than here, Your Honor. Because here, the plaintiff is a resident of Florida. She has no connections to the state of Connecticut. She has no concrete plan to visit the state of Connecticut. She hasn't attempted to book a room at the hotel, nor does she have any intention to book a room at the hotel. But if the service that's being provided is a virtual service, then why does it matter where she lives or what her intention is as to traveling to Connecticut if the service that needs to be provided in a non-discriminatory way is essentially in cyberspace? Well, Your Honor, I think that goes back to the informational injury aspect of the claim and what the Supreme Court said in TransUnion, and that unless a plaintiff has an interest in using that information they've been deprived of, beyond bringing a lawsuit, which we don't have here, then the plaintiff hasn't sustained an informational injury sufficient to give her standing. Isn't that just to say that it's – oh, sorry, go ahead. Didn't she allege that she intends to travel to Connecticut and to the very area where the hotel is as soon as the COVID problem allows it? Well, Your Honor, that brings me to my prior point that it's an allegation at some unknown point in the future that she will travel to Connecticut. She doesn't allege that she's going to stay at the hotel. And I think the case law in this circuit and other circuits have been pretty clear that these Sunday intentions without a concrete plan to avail herself of the services of the hotel are insufficient to suffice the Article III requirements of actual or imminent injury. Of course we don't. I'm sorry, go ahead. Can we also take – do we take notice of the fact that she identifies herself as a tester and she explicitly has this mission of just calling up hotels or looking up hotels around the country to look for this information? Is that probative of whether she actually intends to go visit this particular hotel? I'm sorry, Your Honor. I think – I mean, her status as an ADA tester alone does not give her standing. What I would say – Yeah, go ahead. Sorry. Is that the case law has been clear that the plaintiff herself personally has to sustain a concrete arm in actual or imminent injury, and that's nonexistent in this case. So I understand this argument you're making with the argument you made about transunion. And isn't that just to say that the Supreme Court's standing case law has overtaken Havens Realty? I mean, in Havens Realty they didn't have an intention of utilizing any housing services, and the court just said a violation of the statute is enough to be an injury, but the court's later cases seem to not allow that. Your Honor, I think that may be the case, but even if the court – this court's not willing to go that far, if the court looks at the Tenth Circuit's reasoning and looper to distinguish the Havens case to this case – Yeah, you're saying that the distinction is that they actually received false information in Havens Realty, and here she just didn't receive information. But I mean, the statute and the regulation in this case give her an entitlement to receive the information. So if it was enough not to receive accurate information in Havens Realty, the information you're entitled to under the statute, shouldn't that be enough in this case? I don't think so, Your Honor. If you look at the Tenth Circuit's reasoning and looper, they distinguish the injury in the Havens case to the injuries here in these online reservation cases, because, again, in the Havens case – but they actually said that they had some options that they didn't have or they didn't have some options that they did have, then there would be standing in this case. I don't quite understand your question, Your Honor. I'm sorry. So if Ms. Laufer received false information as opposed to not receiving the required information, you're saying there would be standing? Not necessarily – the plaintiff in Havens intentionally received false information. There was an intent on the defendant to give false information because of her race. So if your client had negligently provided false information, there wouldn't be standing, but if your client had intentionally provided false information, there would be standing? No, I don't think so, Your Honor. There wouldn't be standing regardless, Your Honor, because, again, as TransUnion has indicated, there has to be some downstream consequence to not receiving the information a plaintiff is entitled to or allegedly entitled to under the ADN. No, I get it, but I was asking what's the downstream consequence in Havens Realty? Well, again, Your Honor, I think it goes back to your original point. TransUnion very well may have overruled – or the Supreme Court may have very well overruled the ruling in the Havens case, but even if this panel doesn't believe that to be true, I think, again, if this court looks at how the Tenth Circuit distinguishes Havens from these types of cases— And I guess regardless if we think that there is or is not downstream consequences, it is true that in Hardy our court interpreted Havens Realty to involve both an Article III injury as well as a statutory injury, right? Yes. So we seem to think there was. I'm having trouble identifying what it was, but we did assert in a published opinion that there was a separate concrete injury in addition to the statutory injury. And, again, I think – and I know the court cites to Looper, and what I would say is what Looper says is the alleged injury in these types of cases is distinct from the injury in Havens because the injury in Havens was grounded in intentional misrepresentation and racial animus, which does not exist in here. Well, here would be— Wasn't the injury in Havens to be a victim of discrimination? I think – well, no, I think the injury in Havens was, again, the plaintiff in that case was intentionally given false information because of her race, and then the information given was grounded in intentional misrepresentation, which is different than the facts here. And the facts here, just to be clear, is the allegations are your client omitted information that it was required to disclose, but there's no evidence it did so intentionally to discriminate on the basis of disability. Is that right? There's no evidence. There's no allegation from the plaintiff that my client did it. Right. Okay, Mr. Goulahan, you've reserved two minutes for rebuttal, so we'll hear from you again. Let's turn to the appellee, Mr. Bacon. Good morning, Your Honor. This is Tom Bacon. In the 14 months since the district court's decision, a considerable number of other decisions have come out, circuit court, Supreme Court decisions, circuit court decisions on both sides, so I'm going to try to best make sense of it all. Mr. Bacon, before you start talking about all of those decisions, it strikes me that the one that is most pertinent is the Hardy v. West Point realty. Regardless of what all these other courts have said, how do we distinguish this case from our decision several months ago in that case? Well, as a side note, Hardy was decided about a week and a half before the Arpan decision came out from the 11th Circuit, which created a conflict. The Hardy case, the critical distinction is the Hardy case acknowledged that a similar plaintiff may have suffered unequal treatment but didn't apply it to that case because of a defect in the complaint that is not present in this case. Similarly, the Hardy followed the Lupert decision, which similarly declined to consider stigma. Before you move on from that, can you specify what is the defect in Hardy that's not present in this case? The defect in the Hardy was that the attorney who filed the complaint alleged the statute or alleged the regulation, said that the defendant violated the regulation but contained no reasons why. He didn't say that, for example, that the website operated through Expedia failed to identify. But we know from the Supreme Court and from Hardy that a mere statutory violation is not enough. You need to show an Article III injury, a concrete injury under Article III. So how could it possibly be that the difference between having standing and not having standing is whether you sufficiently allege the elements of a statute? The question is whether or not Haven's Realty applies, whether the additional injury requirements of Spokio apply, whether the additional injury requirements of TransUnion apply. And the difference being, does the court apply the literal definition of the statute as what happened in Haven's Realty, or does it require an additional injury? So that's interesting. So you're saying that Haven's Realty is an exception to TransUnion and Spokio, that when you have a tester who's suing, they don't need to show an Article III injury. In fact, they could just show a statutory injury, and that should be sufficient for standing. Is that your position? Not an exception. The concurring opinion in ARPAN did a pretty good job of explaining my position and adopted my arguments to a large degree. First, it said that if you have an original Supreme Court opinion that is on point, and then subsequent Supreme Court opinions which contain language which undermine the original Supreme Court opinion, that lower courts must still apply the original Supreme Court opinion. Only the Supreme Court can overturn itself. Okay, so then you're saying that perhaps Haven's Realty has been overruled by subsequent cases, but we should adhere to it because the Supreme Court hasn't expressly overturned it. Is that right? I would say that whether or not it was undermined actually is a different argument. I get that argument, but you're saying that we should adhere to Haven's Realty, and Haven's Realty does not seem to require an Article III injury in addition to a statutory injury. But in Hardy, we said that it did. We have a case that's on point from our circuit from not very long ago that says that even a tester needs to show an Article III injury in fact in addition to a statutory violation. But Hardy did not apply unequal treatment, which this court would have to address. In Laufer v. ARPAN, the Eleventh Circuit held that even if the additional injury requirements of Spokio and TransUnion do apply, that stigmatic injury satisfies that additional injury requirement. So that is like emotional distress from being stigmatized would be the injury? Well, for example, the Supreme Court in Heckler v. Matthews 465 U.S. 728 at pages 739 to 740 says exactly this. Discrimination itself by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore less worthy participants in the political community, which apply to that case, can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group. Accordingly, as Justice Brandes explained, when the right invoked is not to equal treatment, the appropriate remedy is a mandate of equal treatment. In other words, as explained in ARPAN, consideration of stigmatic injury or unequal treatment, which I submit are legally synonymous because the Supreme Court has that and discrimination on the same basis. So what is the injury to your client? So if you're saying she's being treated unequally, but what's the concrete harm that she suffered as a result of that? Discrimination, stigmatic injury, the injury of being treated on an inferior basis because she is disabled, because she is denied under the statute, section 1218. Well, the Eleventh Circuit seems to think it was emotional distress, right? Like frustration and embarrassment from being stigmatized. Like if somebody stigmatizes her but she doesn't care and goes on with her life, then I guess there isn't an injury. But the Eleventh Circuit seems to think that if you allege frustration or embarrassment or some kind of emotional harm, that would be enough. Is that your position? Well, so there's, again, a different interpretation. The main court opinion in ARPAN says that stigmatic injury satisfies the additional injury requirement of Spokio and TransUnion. The concurring opinion goes further and says that no, they don't apply, Havens Realty does apply. And that the looper court, and the first court must hold that why doesn't Havens Realty apply? The Hardy court didn't address it. The looper court said that, well, that's about racial animus. It doesn't apply to disabled people. Which directly contradicts what that same court said earlier in Tandy when it held that under Havens Realty that testers have standing under the ADA, and there was no racial animus in that case. The Eleventh Circuit in Houston v. Merritt did the same thing so that Tandy was Title I or Title II. Okay, I'm sorry. So just backing up a second. So you're saying that any allegation of stigma, that there's some kind of discrimination, is enough to establish an injury in fact. And a plaintiff does not need to allege any concrete harm she suffered as a result of the stigma. The fact of there being a stigma or there being unequal treatment is enough to establish an injury, right? Is that your position? Yes, in other words. Now, there are a lot of statutes that prohibit discrimination, right? So aren't you basically saying that all statutes that prohibit discrimination, there's no injury in fact requirement because you're saying the unequal treatment ipso facto is an injury in fact? Yes. And the concurring opinion of – the concurring opinion of Arkan would agree with me. The primary opinion would hold that no, the stigmatic injury is the additional injury. Okay, so your position is that in general when a party sues for a violation of a statute, they need to show a statutory violation in addition to an injury in fact. But whenever a statute prohibits discrimination, they do not need to show an injury in fact because discrimination is always just an injury in fact. So a violation of a statute will always ipso facto be an injury in fact. I think the TransUnion Court did a good job of clarifying that to some extent. Spokia – first of all, TransUnion and Spokia were not civil rights cases. They involved the Fair Credit Reporting Act. And so if lower courts which interpret them as overturning tester standing in not only online reservation cases would similarly reverse this court's ruling in Reagan and would overturn civil rights cases involving tester standing going back to the 1950s. Okay, I think I understand your argument, Mr. Bacon. But isn't that conflicted with what you said in Hardy when we said that even a tester needs to show an Article III injury in fact? I would submit that – I mean is your position that Hardy was wrongly decided? Yes, I would say it's wrongly decided, but by taking out the analysis of unequal treatment, it basically – it treated the case as if it were not a discrimination case. And non-discrimination cases, I would submit, are clearly covered within TransUnion and Spokia. For example, TransUnion and Spokia identified two sorts of statutes. One is the sort of statute which is based on – which is where Congress creates an injury that's not related to any sort of real-world harm. And the example the Spokia court gave was what if you have an incorrect zip code on a credit report? How can that cause any real-world harm? But both courts acknowledge that there are instances where Congress takes a harm that existed in the real world and elevates it into a statutory injury. Spokia didn't identify – Spokia identified informational injury which TransUnion seemed to have undermined. But Spokia – but TransUnion said this, and I'm quoting 141 Supreme Court Reporter 2190 at 2204-05. So here's what the TransUnion court said. Courts must afford due respect to Congress's decision to oppose a statutory prohibition or obligation on the defendant and to grant the plaintiff a cause of action to sue over the defendant's violation of the statutory prohibition or obligation. In that way, Congress may elevate to the status of legally cognizable injuries, concrete, de facto injuries that were previously inadequate at law. And the example it gives is discriminatory treatment, and it cites Allen v. Wright, the prior Supreme Court case. And then it has this following sentence. But even though Congress may elevate harms that exist in the real world before Congress recognizes them to legal status, it may not simply enact an injury into existence using its lawmaking power to transform something that is not remotely harmful into something that is. In other words, my interpretation of that is it again describes the two types of statutes. The first part of the sentence is the type of statute where there was a real world harm, such as discrimination. Okay, I understand that. I understand that point. But can you explain to me, so your client went on the website for a hotel in Connecticut that she might visit someday, but has indefinite plans about whether she's going to visit. And she looked to see if, in the information that it provides about housing options, it provided information about accessibility. And that information wasn't there. So what is the real world harm that Congress has identified in that case? One thing we leave out of these lawsuits is that last July she did go. Did you say that's a hotel? No, but she went through Connecticut and she booked hotels online and, again, looked at hotels for the purpose of booking a hotel. Okay, well, anyway, I don't want to get distracted. So what is the real world harm that happened to her that you're saying Congress can elevate to an Article III injury, in fact? The real world harms were identified in Congress when it enacted the law. It's Section 12101, 42 U.S.C. No, but what's the thing that happened to your client? The client was deprived of the same sort of services as is provided to the general public. In other words, she was deprived of her right to information, and she suffered discrimination as the statute is plainly written. The question being whether or not the court must apply the statute as written or whether Spokio and TransUnion apply and whether it can then impose additional requirements. And I would submit this. In cases where the plaintiff does allege, for example, in a supplemental complaint that she went, that she did subsequently go to the areas, courts, district courts just routinely dismiss those cases under one reason or another or another or another, saying that, well, she— Are you saying that a hotelkeeper who fails to put up the information which is required by the statute, that such a hotelkeeper is in fact discriminating against persons with disabilities by failing to put up the information? Yes. And that discrimination being the recipient of that discrimination is an actual injury even for someone who has no intention of ever going to that area or to that hotel? Yes, and the question being whether or not civil rights testers have standing under numerous civil rights cases. Testers encountered discrimination under various statutes going back to Evers v. Dwyer in the 50s for the purpose of encountering discrimination, challenging the discrimination, and eradicating a discriminatory practice. This court did the same thing in Reagan. Okay, Mr. Bacon, I think we have that argument and we're over time. So I think we're going to turn to the appellant. But thank you very much for your argument. We're going to turn back to Mr. Houlihan on rebuttal. Thank you, Your Honor. Briefly, I want to address the court's recent question regarding whether Ms. Loeffler was discriminated against, and that was the injury. I would just point out, as the Tenth Circuit noted in Looper, that there was no discrimination. All individuals, whether or not disabled, had access to the same information on the online reservation website, which distinguishes itself from the Havens case. Let me interrupt you for a second. Let me just interrupt you for a second. I think there's someone who is not speaking, has an unmuted microphone, and is causing a lot of noise on the circuit. If there's someone who is not speaking – I would just say we didn't hear noise on our end. But if there's anybody who is speaking and is unmuted, please mute your microphone. Your Honor, may I continue? Yes, go ahead. Okay, thank you. So I would just note that, as it relates to this case, that all individuals, whether or not disabled, had access to the same information on the online reservation website. Mr. Houlihan, we went on last time on this. That's not how the ADA envisions discrimination, right? If all individuals have access to the same stairway to get into a building, that's discrimination vis-a-vis people who aren't able to use the stairway without an accommodation. And so the sameness of the information doesn't mean it's not discriminatory. Congress has specifically said in the statute, and then the enabling regulations for the EEOC have specifically said, it is discrimination to provide the same information to everybody if that information doesn't include the information that would be particularly necessary for individuals with disabilities who need to research accommodations. But, Your Honor, I would only say that there's no injury in this case. Again, if you go back to TransUnion, what the Hardy court said, unless a plaintiff has an interest in using that information beyond bringing the lawsuit. Right, so I would think that your argument is, well, it may or may not be discrimination to provide the information or not. But unless that discrimination causes some concrete injury to Ms. Laufer, she doesn't have standing. That seems to be what we said in Hardy. It seems to be what the Supreme Court said in TransUnion. I mean, your opposing counsel said that TransUnion and Spokio should not apply to cases of discrimination statutes. Do you agree with that? I do not, Your Honor. Did we say that in Hardy? I believe you did. I mean, you addressed an ADA case in which the court applied both TransUnion and Spokio, where the plaintiff alleged discrimination. Right, so we have already held in a prior decision that TransUnion and Spokio – that TransUnion and Spokio principles do apply in the context of the ADA. That's correct. Okay. And, Your Honor, if I could just quickly – I know the opposing counsel had brought up the Arpan case in the 11th Circuit. And I just wanted to note that the 11th Circuit in that case relied heavily on the Sierra case to get around TransUnion. However, the Sierra case involved the Rehabilitation Act, which until very recently actually allowed for the recovery of emotional distress damages. That has since been overturned by the Supreme Court in the Cummings case. Wait a minute. Can I ask you this question? So even if we were to follow the 11th Circuit in saying that there's an injury when there's some kind of emotional distress, has Ms. Laufer adequately alleged harm from emotional distress? I don't think she has. In the complaint as it currently stands. Okay. But just to sort of circle back to what I was saying before as it relates to the 11th Circuit, I think the reliance on Sierra is misplaced for the reason I just said. And on top of that, here, Title III of the ADA doesn't allow for this type of injury. It doesn't allow for emotional distress damages. Whereas, in the Sierra case, the Rehabilitation Act did allow for those types of damages. Yeah, but again, you're talking about what the statute allows, but we're talking about whether you have an Article III injury, right? Whether she has a concrete harm. Is it possible that she suffered a concrete harm that could still be redressable by the court, even if you don't get damages for emotional distress? I mean, if she's suffering emotional distress because of stigmatic injury and we could eliminate the stigma through this lawsuit, wouldn't that redress her harm or injury? Again, I don't think that suffices a concrete injury or a concrete harm. That's because of Article III principles, not because of what the statute allows. It's because of Article III principles, and obviously the case law has stated that a private plaintiff has to suffice. The Article III requirements can't just point to a statutory violation. Right. Okay. Let me ask you about a hypothetical situation. Supposing that in the context of today's world, a bartender puts up a sign outside this bar saying, no Russians served here. Does any Russian who drives by and sees it or hears about it or reads about it in the newspaper, does such a person have a harm that would enable a lawsuit against that bar based on national origin discrimination? Under the case law we've talked about today, Your Honor, I don't think so. Okay. Thank you very much, Mr. Houlihan. The case is submitted. Thank you, Your Honor.